UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kyle Richard Greene and Krystle Lynn
Greene,

        Plaintiffs,

v.

Meeker County Department of Human
Services (DHS),

        Defendant.

File No. 22-cv-00291 (ECT/JFD)

**OPINION AND ORDER**

Plaintiffs Kyle Richard Greene and Krystle Lynn Greene, *pro se*.

Brandi L. Schiefelbein, Meeker County Attorney's Office, Litchfield, MN; and Emily
Muirhead McAdam, Greene Espel PLLP, Minneapolis, MN, for Defendant Meeker County
Department of Human Services (DHS).

Pro se Plaintiffs Kyle Richard Greene and Krystle Lynn Greene brought this case
against Meeker County Social Services[1] alleging violations of their rights under the United
States Constitution and the Americans with Disabilities Act related to the suspension of
Kyle's driver's license. Social Services filed a motion to dismiss the Greenes' operative
Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In response,
the Greenes moved for leave to amend that pleading to include additional factual
allegations regarding a state court proceeding in which Kyle contested an aspect of his

---

[1]    The Greenes misidentify Defendant as "Meeker County Department of Human
Services (DHS)." Meeker County has no "Department of Human Services." The correct
name for the relevant department is "Meeker County Social Services." ECF No. 35 at 2.

child support obligations, to add a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and to add two defendants, the Meeker County District Court and the Minnesota Court of Appeals.  The Greenes' motion for leave to amend will be denied because the claims the Greenes seek to assert in their proposed Second Amended Complaint are implausible and therefore futile.  Because the operative Amended Complaint also fails to state a claim upon which relief can be granted, Social Services' motion to dismiss will be granted, and the Greenes' Amended Complaint will be dismissed without prejudice.

I

A review of the proposed Second Amended Complaint [ECF No. 29] shows that it includes all of the allegations of the Amended Complaint [ECF No. 5] and more.  It makes practical sense, then, to describe the facts alleged in the proposed Second Amended Complaint, address the Greenes' motion to amend first, and then address the motion to dismiss.  In describing the relevant facts for the purpose of resolving the motion to amend— the outcome of which depends on whether the proposed Second Amended Complaint would withstand a motion to dismiss under Rule 12(b)(6)—all factual allegations in Plaintiffs' Proposed Second Amended Complaint are accepted as true, and all reasonable inferences are drawn in Plaintiffs' favor.  *See Zutz v. Nelson*, 601 F.3d 842, 850–51 (8th Cir. 2010); *infra* Section II.

Kyle and Krystle are a married couple living in Grove City, Minnesota.  Prop. Second Am. Compl. [ECF No. 29] ¶¶ 2–3, 21.  The Proposed Second Amended Complaint asserts claims against three defendants: Social Services, "Meeker County Court"—which

is understood to refer to the state district court in Meeker County, part of Minnesota's Eighth Judicial District—and the Minnesota Court of Appeals. *Id.* ¶¶ 4–6.

The Greenes allege that in June 2021, Kyle appeared at a hearing in Meeker County District Court addressing Kyle's challenge to a cost-of-living adjustment to his child support obligations; these facts are also reflected in the Findings of Fact, Conclusions of Law, and Order issued by a Child Support Magistrate deciding Kyle's motion, which is attached to the Proposed Second Amended Complaint. *Id.* ¶¶ 7, 10; ECF No. 31 at 2 (introductory paragraphs, statement of the issue, & ¶¶ 1–3).[2]  The Greenes allege, and Kyle testified at that hearing, that Kyle is pursuing various types of work, including attending school to become a Tae Kwon Do instructor and maintaining his twenty-five-acre farm, where he is attempting to build a sustaining goat herd and produce hay, and that Kyle is not working for another individual or company.  Prop. Second Am. Compl. ¶¶ 11–12, 15; ECF No. 31 at 3 ¶¶ 13–16.  The Greenes allege that at the hearing Kyle "reminded [D]efendants that he . . . struggles with a form of PTSD called LAS as well as depression." Prop. Second Am. Compl. ¶ 9.  The Greenes also allege that "Defendants are well aware that [Krystle] is considered 100% disabled and that [Kyle] is her sole care giver."  Prop. Second Am. Compl. ¶ 21.

On July 7, 2021, Kyle's motion contesting the cost-of-living adjustment to his child support obligations was denied.  The Child Support Magistrate found both that the motion

---

[2]     The Greenes attached several documents to their Proposed Second Amended Complaint.  *See* ECF No. 31.  The documents are designated as "Exhibit A" and so forth, but since some exhibits include several different documents, these attachments are cited by their ECF pagination.

was untimely and that Kyle "failed to prove that his ability to earn or that his income did

not or could not increase significantly to allow fulfillment of the proposed" adjustment.

ECF No. 31 at 4 ¶¶ 18–19, Order ¶¶ 1–2.  The Child Support Magistrate also found that

Kyle "raised multiple issues related to past court orders and actions of the parties that are

not relevant to the existing matter of hand," the cost-of-living adjustment.  ECF No. 31 at

3 ¶ 8; Prop. Second Am. Compl. ¶ 10 (quoting same).

Kyle appealed this decision and alleges he "could not get defendants Meeker County

[District Court] or Minnesota Court of Appeals to even look at [his] In Forma Pauperis

[application]."  Prop. Second Am. Compl. ¶ 16.  The documents attached to the Greene's

proposed pleading tell more of the story of Kyle's alleged *in forma pauperis* ("IFP")

application.  As an October 7, 2021 order by the Minnesota Court of Appeals describes,

Kyle filed his appeal with that court on September 4, 2021, and on September 9, the clerk

of the appellate courts directed Kyle to pay the filing fee or file "a copy of an order from

the district court waiving the filing fee on appeal," as well as to file certain other

documents.  ECF No. 31 at 24 ¶¶ 1–2.  The appellate court then issued an order on

September 24 directing Kyle to remedy those deficiencies by October 4.  ECF No. 31 at

24 ¶ 3.  Kyle filed a "motion to take judicial notice" with the Court of Appeals and the

Meeker County District Court, dated October 4.  ECF No. 31 at 24 ¶ 4; *id.* at 27.  In that

motion, Kyle asserted that he previously attached a motion and affidavit for proceeding

IFP to his appeal, and he attached a copy of an appellate IFP motion and affidavit bearing

a signature dated September 4.  ECF No. 31 at 27 (motion to take judicial notice); *id.* at16–

18 (motion and affidavit for proceeding IFP in the Court of Appeals); *id.* at 24 ¶ 4 (Court

of Appeals order dated October 7, 2021, noting that a copy of an appellate IFP application was filed in that court). Kyle further stated that he "can only speculate why the trial court would grant his IFP at the trial level but under the same circumstances deny Greene meaningful access to the courts on appeal by refusing to acknowledge or grant his IFP on Appeal." ECF No. 31 at 27. Though Kyle also sent the motion to take judicial notice and the IFP application to the Meeker County District Court, nothing indicates the IFP application for the appeal actually was filed on the docket for Kyle's district court case.

Having received Kyle's motion to take judicial notice, the Court of Appeals issued its October 7 order. In that order, the Court of Appeals noted the rule that a party wishing to proceed IFP on appeal must file a motion in district court, citing Minn. R. Civ. App. P. 109.02, and then observed: "The district court administrator's register of actions does not indicate that appellant has filed the IFP application in district court." ECF No. 31 at 25 ¶ 6. The Court of Appeals gave Kyle through October 18 to "either pay the $550 filing fee or file a copy of a district court order granting appellant leave to proceed IFP on appeal." ECF No. 31 at 26 ¶ 1. Nothing in the record indicates Kyle did so, and his appeal was eventually dismissed, "without the Trial Court allowing [Kyle] to proceed IFP." Prop. Second Am. Compl. ¶ 17. Later in the proposed Second Amended Complaint, within the allegations for their fourth cause of action and as fleshed out by the attached exhibits, the Greenes allege that Kyle was not aware that his appeal had been dismissed until he received a letter from the Court of Appeals dated December 30, 2021. *Id.* ¶ 53. Kyle had filed another motion to take judicial notice on December 24, 2021, asserting that he had cured the deficiencies the court had previously notified him about on October 4 and then did not

monitor the docket until December 24, when he "discovered that this court had already thrown him out without providing him a copy of the court's order."  ECF No. 31 at 45.  The motion did not request any specific relief.  *See id.* at 45–46.  The Office of the Clerk of the Appellate Courts returned the motion "un-filed as this case was dismissed by order on October 27, 2021" and filings in closed cases were not accepted.  *Id.* at 44.

On January 17, 2022, the Minnesota Department of Public Safety sent Kyle a Notice of Suspension, stating that the Department of Public Safety had been notified by "the Department of Human Services" ("DHS") that Kyle had not complied with a payment agreement and so his driver's license would be suspended as of February 1, 2022.  Prop. Second Am. Compl. ¶ 18; ECF No. 31 at 31.  The Greenes allege that the suspension was "based upon the instruction of defendant."  Prop. Second Am. Compl. ¶ 18.  The Greenes do not specify which Defendant they mean, but it seems safe to assume they mean Social Services.  The Greenes allege that "no [DHS] payment agreement exists, therefore the basis of the suspension of [Kyle's] license is fraud upon the court."  Prop. Second Am. Compl. ¶ 20.

The Greenes' proposed Second Amended Complaint contains five causes of action, each asserted against all Defendants—that is, Social Services and the sought-to-be-added Defendants, Meeker County District Court and the Minnesota Court of Appeals:

(1) The Greenes allege a violation of RICO based on a predicate act of mail fraud.  *Id.* at 5 & ¶ 24.  The Greenes do not describe additional facts to support this cause of action.

(2) The Greenes allege violations of the Americans with Disabilities Act.  *Id.* at 6.  The Greenes list many "[s]ervices that have been denied to [them]," including "Driver

Services," "Mail Services," "Employment and Training Services," "Public Services," and others, each with a Minnesota statute, federal statute, or Meeker County website cited. *Id.* ¶ 31. They also allege the following:

> To suspend [Kyle's] driver's license, without legal merit as defendants have here, not only prohibit[s] Mr. Greene from earning a living to support his family but also deprive[s] Mrs. Greene of her right to life by prohibiting her Personal Care Assistant (PCA) from exercising his duties in the care of Mrs. Greene's physical and mental health, deprive[s] her of her right to liberty otherwise offered to white non-disabled individuals and deprive[s] her of her right to property by forcing Mrs. Greene to continue to support her family without the aid of her Husband Mr. Greene.

*Id.* ¶ 32.

(3) The Greenes allege a violation of their Fourteenth Amendment "right to earn a living." *Id.* at 8. To support this claim, the Greenes allege that Kyle works more than forty hours per week by caring for his disabled wife, working on his farm, and serving as a Tae Kwon Do instructor; that Kyle provided the Minnesota Appellate Public Defender's office "with sufficient proof" that he works more than forty hours per week; and that the Greenes have several tractors that need parts to run so that they can operate their farm. *Id.* ¶¶ 37, 42.

(4) The Greenes assert a due process claim. *Id.* at 11. The Greenes' allege that the "Meeker County [Court]'s July 7, 2021 order is inconsistent with their position" in another case "in an October 2017 hearing under similar circumstances." *Id.* ¶ 44. The Greenes pose a series of questions each beginning with, "Was due process satisfied when . . . ," or similar phrasing. *Id.* ¶¶ 46–49. The Greenes allege Kyle "has become aware of" a practice

of "[r]efusing to properly notify through the mail" by "Minnesota's court system when dealing with blacks." *Id.* ¶ 50. The allegations go on to say that "[e]ven if [the Greenes] received the Notice of intent to suspend [Kyle's] driver's license," they believe such a suspension was barred under Minn. R. Civ. App. P. 108.01, subd. 2, which reads in part: "[T]he filing of a timely and proper appeal suspends the trial court's authority to make any order that affects the order or judgment appealed from." *Id.* ¶ 51. The Greenes allege this rule stayed the state district court's judgment so the notice regarding suspending Kyle's driver's license in September 2021 was "untimely" at least until October 27, 2021, when Defendants Meeker County Court and the Minnesota Court of Appeals "refused to [g]rant, accept or acknowledge" Kyle's appellate IFP application. *Id.* ¶ 52. The allegations detail that Kyle was not aware that his appeal had been dismissed and pose the question: "How could [Kyle] request a hearing on the intent to Suspend his driver's license if he was not notified of any [need or requirement] to do so?" *Id.* ¶¶ 53–54. The Greenes allege that "[p]rocedural and substantive due process has [sic] been violated in this case along with abuse of process" and that courts issue rulings that ignore applicable law in favor of pro se litigants "in order to make lawyers look good." *Id.* ¶¶ 56–57.

(5) The Greenes assert a race-discrimination claim. *Id.* at 16. The Greenes allege that "Defendants' actions suggest a policy or custom that reflects the continued existence and application of the Black Codes." *Id.* ¶ 60. They further allege that it is "imperative" that Kyle's driver's license be maintained so that they may "conduct their daily lives, operate their farm, travel to appointments, travel to pick up and drop off their children to and from school, grocery shopping, attending school events and extra curricular activities

of their children, traveling to and from [Kyle's] Tae Kwon Do school in an attempt to earn a living in order to support his family." *Id.* ¶ 64.

For relief, the Greenes request an order staying proceedings of, as well as an order prohibiting, any suspensions or revocations of Kyle's driver's license; an order requiring Defendants to recognize that the Greenes "meet the standards as set forth in the ADA and to cease all discriminatory and retaliatory actions against [the Greenes] and to allow [them] the full enjoyment of all public accommodations as are enjoyed by white, non-disabled individuals"; an order prohibiting Defendants from interfering with the Greenes' right to earn a living; and other "just, proper and equitable" relief. *Id.* at 20 ¶¶ 1–5.

The Greenes filed their original Complaint in this case in January 2022, and were ordered to remedy the absence of Krystle's signatures on the Complaint and IFP application. ECF Nos. 1, 4. The Greenes filed an Amended Complaint with the necessary signature and paid the filing fee, allowing the case to proceed. ECF Nos. 5, 8. The Amended Complaint alleged claims against Social Services only; the claims alleged were similar to the causes of action in the Proposed Second Amended Complaint, though there was no RICO claim. *See* Am. Compl. In response to the Amended Complaint, Social Services filed a pleading that included both an answer and Rule 12 motions. ECF No. 12. Social Services was ordered either to withdraw this filing and file a motion complying with the relevant Local Rule *or* file a letter indicating that the previous filing was the operative answer and forego the Rule 12 motions. ECF Nos. 12, 14. Social Services instead filed both a motion to dismiss pursuant to Rule 12(b)(6)—accompanied by a memorandum— and an answer. ECF Nos. 15, 16, 20. In response to the motion to dismiss, the Greenes

filed a motion for leave to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).  ECF No. 28.  No party requested a hearing on its motion, and the motions will be decided without a hearing.  *See* D. Minn. LR 7.1(c)(5).

## II

Rule 15 requires a federal court to "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Though this standard is liberal, parties do not have an absolute right to amend.  *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008).  A motion to amend may be denied for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."  *Id.* (citation omitted).  "Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6)," and therefore "in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the *Twombly* pleading standard."  *Zutz*, 601 F.3d at 850–51 (cleaned up).  In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

III

A

All claims against Meeker County District Court and the Minnesota Court of Appeals can be addressed together. They are barred by the state's Eleventh Amendment immunity. "[A] state court is an arm of the state government, which the Eleventh Amendment protects from suit in federal court in all but very limited circumstances." *Lanners-Ford v. Minnesota*, No. 20-cv-1206 (PAM/HB), 2020 WL 8839489, at *1 (D. Minn. June 9, 2020); *see also Korb v. Est. of Consiglio*, No. 18-cv-1807 (JRT-KMM), 2018 WL 4292292, at *2 (D. Minn. Aug. 20, 2018) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)) (concluding that Kansas court system, as an arm of the state, is invested with sovereign immunity from suit in federal court), *R. & R. adopted sub nom. Korb v. Est. of Consigilo*, 2018 WL 4286411 (D. Minn. Sept. 7, 2018). There is nothing to suggest that the limited circumstances allowing a suit to proceed against a state in federal court are present here. *See Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 937–38 (D. Minn. 2018) ("The Eleventh Amendment bars suit against state governments brought in federal court unless the state has clearly and unequivocally waived its immunity, or Congress has abrogated the states' Eleventh Amendment immunity with respect to that particular cause of action.") (citations omitted). All claims against the Meeker County District Court and the Minnesota Court of Appeals are therefore futile.

11

B

Turning to the Greenes' claims against Meeker County Social Services, these claims fail at the outset because Meeker County Social Services is not an entity that can be sued. Pursuant to Federal Rule of Civil Procedure 17(b)(3), parties that are not individuals or corporations may be sued depending on "the law of the state where the court is located." Thus, Minnesota law determines whether a municipal entity may be sued.   Under Minnesota state law, "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function."   Minn.Stat. § 466.02 (2014).  A "county" is a "municipality" and thus may be sued.   *See* Minn.Stat. § 466.01, subd. 1 (2014) ("municipality means . . . any county"); Minn.Stat. § 373.01, subd. 1(a)(1) (2014) ("[e]ach county is a body politic and corporate and may sue and be sued").   But courts in this District have repeatedly held that under Minnesota law, county human services departments are not entities that may be sued.  *See Jones v. Brown County Fam. Servs*., No. 11-cv-568 (SRN/FLN), 2011 WL 3165052, at *1 (D. Minn. June 30, 2011), *report and recommendation adopted*, No. 11-cv-568 (SRN/FLN), 2011 WL 3163308 (D. Minn. July 27, 2011) (Brown County Family Services Department is not an entity that may be sued); *Doe v. Mower  Cnty. Health & Human Services Off. of Child Support*, 18-cv-3221 (WMW/KMM), 2019 WL 3570870, at *3 (D. Minn. May 13, 2019), *report and recommendation adopted*, 18-cv-3221 (WMW/KMM), 2019 WL 3824256 (D. Minn. Aug. 15, 2019) ("courts consistently hold that arms of local governments, such as county departments or county agencies, are not subject to suit"); *Simon v. Anoka Cnty. Soc. Servs.,*

No. 12-cv-2754 (SRN/JSM), 2014 WL 6633077, at *7 (D. Minn. Nov. 21, 2014)

("Although the actions of a county department or commission 'may subject the county

itself to liability, [a county department or commission] itself is not a proper defendant

subject to suit in a section 1983 lawsuit.'"); *Neudecker v. Shakopee Police Dept.*, No. 07-

cv-3506 (PJS/JJG), 2008 WL 4151838, at *11 (D. Minn. Sept. 3, 2008), *aff'd* 355 Fed.

Appx. 973 (8th Cir. 2009); *Follis v. Minn. Atty. Gen.*, No. 08-cv-1348 (JRT/RLE), 2010

WL 3399674, at *7 (D. Minn. Feb. 16, 2010), report and recommendation adopted, No.

08-cv-1348 (JRT/RLE), 2010 WL 3399958 (D. Minn. Aug. 26, 2010); *see also Hyatt v.

Anoka Police Dep't*, 700 N.W.2d 502, 505 (Minn. Ct. App. 2005) ("While a municipal

corporation such as the city has the authority to sue and be sued, its departments have not

been given that specific authority.").   Accordingly, the claims against Meeker County

Social Services will be dismissed because it is not a proper defendant subject to suit.

C

1

If Social Services were subject to suit, the Greenes' claims would fail on their

merits.  The Greenes' first cause of action in the Proposed Second Amended Complaint is

a RICO violation based on a predicate act of mail fraud.  *See* Prop. Second Am. Compl.

¶¶ 23–27.  Section 1962 of RICO makes it "unlawful for any person employed by or

associated with any enterprise engaged in, or the activities of which affect, interstate or

foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity or collection of unlawful

debt."  18 U.S.C. § 1962(c).  "RICO provides a private right of action for any person

'injured in his business or property by reason of a violation of' its substantive prohibitions." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted) (quoting 18 U.S.C. § 1964(c)). "A violation of § 1962(c) requires appellants to show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (cleaned up). "The term 'racketeering activity' is defined to include a host of so-called predicate acts, including 'any act which is indictable under . . . section 1341 (relating to mail fraud)." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1961(1)(B)). Mail fraud "occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting so to do.'" *Id.* (quoting § 1341). The failure to sufficiently allege any one element means the entire RICO claim fails. *See Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1028 (8th Cir. 2008). In addition to Rule 8's plausibility standard, "[a] RICO claim must be pleaded with particularity under Rule 9(b)[.]" *Crest Const. II*, 660 F.3d at 353 (cleaned up).

The proposed pleading does not connect the dots or explain in any way what the alleged RICO violation is, and to the extent the theory can be put together at all, the allegations fail on at least one element. A pattern of racketeering activity requires at least two predicate acts for each defendant. 18 U.S.C. § 1961(5); *Crest Const. II*, 660 F.3d at 358. The only allegation concerning mail that either Plaintiff received is Kyle's receipt of the January 2022 notice of intent to suspend his driver's license. Other allegations reference documents that were *not* mailed, *see* Prop. Second Am. Compl. ¶¶ 31 n.7, 34, 47, 50, but the Greenes offer no legal authority for the proposition that these documents may

serve as a predicate act supporting a RICO violation. *See* ECF No. 40 ¶¶ 61–76 (discussing RICO claim but referring to various documents that were not mailed or not received by Kyle). Perhaps the Greenes also meant to allege that the various orders and letters from Minnesota state courts identified in the proposed pleading were mailed and received by Kyle, but that doesn't work, either. Assuming those facts are pleaded, there are no facts setting forth how each mailing was for the purpose of executing or an attempt to execute any scheme to defraud, and no facts are alleged showing how those acts could be imputed to Social Services, the only Defendant still potentially in the suit.

2

The Greenes second cause of action alleges violations of the ADA. Prop. Second Am. Compl. ¶¶ 28–34. To state a claim under Title II of the ADA, Plaintiffs must allege (1) that they are qualified individuals with a disability; (2) that they were excluded from participation in or denied the benefits of services, programs, or activities of the defendant, or were otherwise subjected to discrimination by the defendant; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of their disability. *Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020). It is assumed here, as Social Services did in its opposition to the motion to amend, ECF No. 35 at 15, that both Kyle and Krystle meet the first element of being qualified individuals with disabilities. Their ADA claim fails at the second and third elements.

The Greenes allege a list of "[s]ervices that have been denied to [them]," Prop. Second Am. Compl. ¶ 31, but they do not allege facts plausibly showing that Social Services denied the Greenes these services. Nor do the Greenes allege facts plausibly

showing that the denial of these services was by reason of their disabilities.  The allegations suggest the suspension of Kyle's driver's license is the basis of the ADA claim, *see* Prop. Second Am. Compl. ¶ 32, but again, it is not alleged that this occurred by reason of either of the Greenes' disabilities.  If that fact were alleged, without more, it would be rendered implausible by the notice attached to the proposed pleading, which says that the suspension would occur because of lack of compliance with DHS requirements, specifically non-compliance with a payment agreement.  ECF No. 31 at 31.

### 3

The Greenes allege a violation of their Fourteenth Amendment right "to earn a living."  Prop. Second Am. Compl. ¶¶ 35–42.  There are no allegations of any interference with Krystle's efforts to earn a living, so this claim can only be understood as asserted by Kyle.  Social Services understands this claim as a substantive due process claim and argues convincingly that it should be addressed, and rejected, as an as-applied constitutional challenge to certain Minnesota statutes authorizing the suspension of a driver's license when someone fails to fulfill child support obligations.  ECF No. 35 at 17–18.  Social Services reasons that this case is similar to *State ex rel. Commissioner of Human Services v. Buchmann*, 830 N.W.2d 895 (Minn. Ct. App. 2013), where the Minnesota Court of Appeals concluded that the statutes pursuant to which the state suspended a commercial truck driver's license for failure to pay child support survived rational basis review.  ECF No. 35 at 18.

The Greenes' response seems to reject the idea that they assert a substantive-due-process challenge.  The Greenes argue that they "never disputed the legitimacy of Minn. Stat. 518A.65" and that "[t]he issue in dispute is that Defendants did not comply with the ministerial duties of Minn. Stat. 518A.65," specifically by failing to send Kyle a notice of intent to seek suspension of his driver's license at least 90 days before pursuing the suspension with the commissioner of public safety.  ECF No. 40 at ¶¶ 84–85; *see also id.* ¶¶ 90, 92 (addressing Social Services' argument regarding the "Claim for Violation of His Substantive Due Process Right to Work" and stating that the Greenes "addressed this issue above"); *id.* ¶¶ 83–84 (stating that "Defendants are misinformed of the difference between Substantive Due Process and Procedural Due Process" and going on to state that the Greenes never disputed the legitimacy of the statute).  Given the Greenes' argument, to the extent a substantive due process claim based on the right to earn a living was alleged, it is understood to be abandoned.  To the extent the Greenes seek to recast this claim as one for procedural due process, it will be analyzed in the next section (addressing the Greenes' procedural-due-process claim).

4

The Greenes assert a procedural-due-process claim.  Prop. Second Am. Compl. ¶¶ 43–58.  It is difficult to discern what theory or theories the Greenes pursue with this claim.  As noted, they pose a series of questions about whether due process was satisfied when certain events occurred or did not occur, and it is not clear whether all or perhaps some of those questions are meant to be the basis for the claim.  *See id.* ¶¶ 46–49.

In their briefing, the Greenes seem to assert that there was insufficient process in connection with the suspension of Kyle's driver's license. This theory fails. The proposed Second Amended Complaint alleges that Kyle received a notice regarding his license in January 2022; it does not allege that he should have received other notice, that he did not receive other notice or process that was due, or that Social Services did not "mail a written notice," as required by Minn. Stat. § 518A.65(c). The Greenes do allege that the suspension of the driver's license was based on a contract that does not exist. Prop. Second Am. Compl. ¶¶ 19–20, 32 n.9, 48. But it is not apparent from the proposed pleading that they mean this to be a basis of a procedural-due-process claim. The closest the Greenes come to alleging this theory is posing the question whether due process was satisfied when the suspension occurred. *Id.* ¶ 48. In any event, that is not enough to plausibly allege how the procedures followed by the State were constitutionally insufficient. *See Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2016) ("The Supreme Court mandates a two-step analysis for procedural-due-process claims: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.") (cleaned up). In other words, assume the Greenes are correct that the contract did not exist. That says nothing about the constitutional sufficiency of the process by which the responsible agency determined that the contract existed. The Greene's allegations hint that a procedural-due-process violation occurred when the suspension of Kyle's driver's license was pursued despite the pendency of Kyle's appeal of the cost-of-living adjustment decision. Prop. Second Am. Compl. ¶¶ 51–52. But this theory is implausible. The theory is flawed

because it relies on alleged violations of a state-court rule, not constitutional rules.  A violation of the former does not show a violation of the latter.  And the theory depends on misinterpretations of the state-court rule.  The rule the Greenes cite as support for this theory, Minn. R. Civ. App. P. 108.01, subd. 2, concerns the effect of appellate proceedings on trial court action, but the Greenes allege that Social Services (not the trial court) pursued suspension of the driver's license.  The Greenes also misunderstand Minn. R. Civ. App. P. 108.01, subd. 2, as "'stay[ing]' a district court's judgment while on appeal," Prop. Second Am. Compl. ¶ 52, but that is not what that rule says.  The rule says the opposite: "Except as otherwise provided by rule or statute, an appeal from a judgment or order does not stay enforcement of the judgment or order in the trial court . . . ."  Minn. R. Civ. App. P. 108.01, subd. 1.  The Greenes identify no other law or rule that would have required a stay of the license suspension pending the appeal.  Finally, if the Greenes were correct on the law, the allegations in, and the documents attached to, the Greenes' Proposed Second Amended Complaint show that Kyle did not file a timely and proper appeal.

5

The fifth cause of action is racial discrimination, Prop. Second Am. Compl. ¶¶ 59–65.  The precise legal basis of this claim is not clear.  The Greenes set out the elements of 42 U.S.C. § 1981 in the proposed pleading, *id.* ¶ 62, but that is amidst a variety of references to legal authorities that are not accompanied by explanation of the authorities' relationship to the claim, *see id.* ¶¶ 61–63, and the Greenes do not take issue with Social Services' characterization of the claim as an equal protection claim, *see* ECF No. 35 at 22–23; ECF No. 40 ¶¶ 96–97.

"[Section] 1981 prohibits racial discrimination in all phases and incidents of a contractual relationship, [but] the statute does not provide a general cause of action for race discrimination." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009) (cleaned up). "Any claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff has rights," though the statute is not "limited to existing contractual relationships" and "protects the would-be contractor along with those who already have made contracts, . . . thus appl[ying] to discrimination that blocks the creation of a contractual relationship that does not yet exist." *Id.* at 468–69 (cleaned up). A § 1981 claim has four elements: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant." *Id.* at 469. As for an equal protection claim, "a plaintiff must prove: the person, compared with others similarly situated, was selectively treated; and 2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Cent. Specialties, Inc. v. Large*, 482 F. Supp. 3d 886, 896 (D. Minn. 2020), *aff'd*, 18 F. 4th 989 (8th Cir. 2021). "Where a plaintiff constitutes a class of one and does not allege membership as part of a class or group, a plaintiff must establish 1) that he has been treated differently than others similarly situated; and 2) that there is no rational basis for the difference in treatment." *Id.*

The Greenes fail to allege a plausible claim under either § 1981 claim or an equal protection theory.  To the extent discriminatory intent or selective treatment based on an impermissible consideration is alleged at all, the allegations are conclusory and not supported by plausible factual allegations.  The Greenes identify no impaired contractual relationship under which they have rights.  They do not allege anything about others similarly situated.

IV

The determination that all claims asserted in the Greenes' proposed Second Amended Complaint against Social Services are futile necessarily requires the dismissal of the Greenes' operative Amended Complaint.  It includes fewer factual allegations supporting a subset of the same claims asserted in the proposed Second Amended Complaint.  In other words, if the Greenes' proposed amended pleading is futile, then so is their operative Amended Complaint.  Therefore, Social Services' motion to dismiss the Amended Complaint for failing to state a claim upon which relief can be granted will be granted.

**ORDER**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.     Plaintiff Kyle Richard Greene and Krystle Lynn Greene's Motion for Leave to Amend [ECF No. 28] is **DENIED**; and

2.      Defendant Meeker County Department of Human Services (DHS)'s Motion to Dismiss for Failure to State a Claim [ECF No. 15] is **GRANTED**, and Plaintiffs' Amended Complaint is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted.

<strong>LET JUDGMENT BE ENTERED ACCORDINGLY.</strong>

Dated:  September 8, 2022                           s/ Eric C. Tostrud
                                                    Eric C. Tostrud
                                                    United States District Court